1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10               WESTERN DIVISION

11   KELLI C. S.,[1]                    )   Case No. 2:22-cv-03626-JDE
                        Plaintiff,      )
12                                      )
                                        )   MEMORANDUM OPINION AND
13           v.                         )   ORDER
                                        )
14   KILOLO KIJAKAZI, Acting            )
15   Commissioner of Social Security,   )
                                        )
16                      Defendant.      )
17   ────────────────────────────────

18          Kelli C. S. ("Plaintiff") filed a Complaint on May 26, 2022, seeking

19   review of the Commissioner's denial of her application for disability insurance

20   benefits ("DIB").[2] The parties filed a Joint Submission ("Jt. Stip.") regarding

21   the issues in dispute on April 7, 2023. The matter now is ready for decision.

22

23          [1] Plaintiff's name has been partially redacted in accordance with Fed. R. Civ.
24   P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration
     and Case Management of the Judicial Conference of the United States.
25
             [2] Plaintiff also requested review of the Commissioner's denial of her
26   application for supplemental security income ("SSI") (Complaint ¶ 1), but the
27   administrative record does not reflect Plaintiff submitted an SSI application. See
     Administrative Record ("AR") 15, 3564.
28

# I.

# BACKGROUND

Plaintiff filed her application for DIB on January 12, 2015, alleging disability starting on January 9, 2014. AR 46, 152-57. After her application was denied initially and on reconsideration (AR 58, 73), an administrative hearing was held regarding Plaintiff's claim on October 23, 2017. AR 31-45. Plaintiff, represented by counsel, testified before an Administrative Law Judge ("ALJ"), as did a vocational expert ("VE"). Id. On November 9, 2017, the ALJ issued a written decision finding Plaintiff was not disabled. AR 15-25.

After the Appeals Council denied a request for review (AR 1-6), Plaintiff appealed to this Court. On March 25, 2019, the undersigned concluded that the ALJ improperly discounted the third-party function report completed by Plaintiff's ex-husband. Kelli C. S. v. Berryhill, 2019 WL 1330890 (C.D. Cal. Mar. 25, 2019); AR 3556-59. The Court remanded the matter for further proceedings, instructing the ALJ to "reassess the third-party function [report] and Plaintiff's subjective complaints in conjunction with the medical evidence, and then reassess Plaintiff's [residual functional capacity ("RFC")] in light of that analysis, and thereafter proceed through the remaining steps of the disability analysis to determine what work, if any, Plaintiff is capable of performing that exists in significant numbers in the national or regional economy." AR 3559-61.

On April 12, 2019, the Appeals Council vacated the Commissioner's prior decision, consolidated the case with a duplicate claim for DIB subsequently filed by Plaintiff, and remanded to an ALJ for further proceedings consistent with this Court's order. AR 3562-67. On remand, a different ALJ held a new hearing on November 13, 2019, during which Plaintiff, represented by counsel, testified before an ALJ, as did a VE. AR 3500-41. On November 14, 2019, Plaintiff amended her alleged onset date to July 24, 2018. AR 3668.

2

On December 13, 2019, the ALJ issued a written decision finding Plaintiff was not disabled. AR 3482-95. The ALJ found Plaintiff last met the insured status requirements on December 31, 2018. AR 3485. The ALJ found Plaintiff did not engage in substantial gainful activity from her amended alleged onset date through her date last insured. Id. The ALJ concluded Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, bipolar disorder, post-traumatic stress disorder, and personality disorder. Id. The ALJ also found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment (id.), and she had the RFC to perform light work[3] except as follows (AR 3487):

> [Plaintiff] could no more than frequently push and/or pull. She could never climb ladders, ropes, or scaffolds, and could no more than occasionally perform all other postural activities. She could no more than frequently reach and frequently walk on uneven terrain. In addition, she was limited to simple, routine tasks with no more than occasional interaction with supervisors and incidental contact with coworkers and the public.

The ALJ found Plaintiff was unable to perform her past relevant work as a licensed practical nurse (Dictionary of Occupational Titles ["DOT"] 079.374-014) or medical assistant (DOT 079.362-010). AR 3493. The ALJ also found

---

[3] "Light work" is defined as
lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.
20 C.F.R. § 404.1567(b); see also Aide R. v. Saul, 2020 WL 7773896, at *2 n.6 (C.D. Cal. Dec. 30, 2020).

1  that Plaintiff was closely approaching advanced age, had at least a high school

2  education, and could communicate in English. Id. Finally, the ALJ found that,

3  considering Plaintiff's age, education, work experience, RFC, and the VE's

4  testimony, there were other jobs that existed in significant numbers in the

5  national economy that she could have performed, including the representative

6  occupations of hand packager (DOT 559.687-074), small products assembler I

7  (DOT 706.684-022), and electronics worker (DOT 726.687-010). AR 3493-94.

8  Thus, the ALJ concluded Plaintiff has not been under a "disability," as defined

9  in the SSA, from the alleged onset date[4] through the date last insured. AR 3494.

10 The Appeals Council found Plaintiff's written exceptions did not provide a

11 basis for changing the ALJ's decision, making the ALJ's remand decision the

12 agency's final decision. AR 3467-73.

## II.

## LEGAL STANDARDS

### A.    Standard of Review

16      Under 42 U.S.C. § 405(g), this Court may review a decision to deny

17 benefits. The ALJ's findings and decision should be upheld if they are free

18 from legal error and supported by substantial evidence based on the record as a

19 whole. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (as

20 amended); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial

21 evidence means such relevant evidence as a reasonable person might accept as

22 adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035

23 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Id.

24      To assess whether substantial evidence supports a finding, the court

25 "must review the administrative record as a whole, weighing both the evidence

26 that supports and the evidence that detracts from the Commissioner's

27

---

[4] The ALJ referred to the original alleged onset date.

28

1    conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998). "If the

2    evidence can reasonably support either affirming or reversing," the reviewing

3    court "may not substitute its judgment" for that of the Commissioner. <u>Id.</u> at

4    720-21; <u>see also</u> <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even

5    when the evidence is susceptible to more than one rational interpretation, [the

6    court] must uphold the ALJ's findings if they are supported by inferences

7    reasonably drawn from the record."), <u>superseded by regulation on other</u>

8    <u>grounds as stated in</u> <u>Smith v. Kijakazi</u>, 14 F.4th 1108, 1111 (9th Cir. 2021).

9    Lastly, even if an ALJ errs, the decision will be affirmed if the error is harmless

10   (<u>Molina</u>, 674 F.3d at 1115), that is, if it is "inconsequential to the ultimate

11   nondisability determination," or if "the agency's path may reasonably be

12   discerned, even if the agency explains its decision with less than ideal clarity."

13   <u>Brown-Hunter</u>, 806 F.3d at 492 (citation omitted); <u>Smith</u>, 14 F.4th at 1111

14   (even where the "modest burden" of the substantial evidence standard is not

15   met, "we will not reverse an ALJ's decision where the error was harmless").

16   **B.    <u>The Five-Step Sequential Evaluation</u>**

17   When a claim reaches an ALJ, the ALJ conducts a five-step sequential

18   evaluation to determine at each step if the claimant is disabled. <u>See</u> <u>Ford v.</u>

19   <u>Saul</u>, 950 F.3d 1141, 1148-49 (9th Cir. 2020); <u>Molina</u>, 674 F.3d at 1110.

20   First, the ALJ considers if the claimant works at a job that meets the

21   criteria for "substantial gainful activity." <u>Molina</u>, 674 F.3d at 1110. If not, the

22   ALJ proceeds to a second step to assess whether the claimant has a "severe"

23   medically determinable physical or mental impairment or combination of

24   impairments that has lasted for more than twelve months. <u>Id.</u> If so, the ALJ

25   proceeds to a third step to assess whether the impairments meet or equal any of

26   the listed impairments in the Social Security Regulations at 20 C.F.R. Part 404,

27   Subpart P, Appendix 1, rendering the claimant disabled. <u>See</u> <u>Rounds v.</u>

28   <u>Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1001 (9th Cir. 2015) (as amended). If

5

1  the impairments do not meet or equal a listed impairment, before moving to the
2  fourth step the ALJ assesses the claimant's RFC, that is, what the claimant can
3  do on a sustained basis despite the limitations from her impairments. See 20
4  C.F.R. § 404.1520(a)(4); Social Security Ruling 96-8p, 1996 WL 374184 (July
5  2, 1996). After assessing the RFC, the ALJ proceeds to the fourth step to
6  determine if, in light of the RFC, the claimant can perform past relevant work
7  as actually or generally performed. See Stacy v. Colvin, 825 F.3d 563, 569 (9th
8  Cir. 2016). If the claimant cannot perform her past relevant work, the ALJ
9  proceeds to a fifth and final step to determine whether there is any other work,
10 in light of the claimant's RFC, age, education, and work experience, that the
11 claimant can perform and that exists in "significant numbers" in either the
12 national or regional economies. See Tackett v. Apfel, 180 F.3d 1094, 1100-01
13 (9th Cir. 1999); 20 C.F.R. § 404.1566(a). If the claimant can do other work, she
14 is not disabled; but if the claimant cannot do other work and meets the duration
15 requirement, the claimant is disabled. See Tackett, 180 F.3d at 1099; see also
16 Woods v. Kijakazi, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing the
17 steps and noting that "[t]he recent [2017] changes to the Social Security
18 regulations did not affect the familiar 'five-step sequential evaluation
19 process.'").
20     The claimant generally bears the burden at steps one through four to
21 show she is disabled or meets the requirements to proceed to the next step and
22 bears the ultimate burden to show she is disabled. See, e.g., Ford, 950 F.3d at
23 1148; Molina, 674 F.3d at 1110; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th
24 Cir. 1995). However, at Step Five, the ALJ has a limited burden of production
25 to identify representative jobs that the claimant can perform and that exist in
26 "significant" numbers in the economy. See Hill v. Astrue, 698 F.3d 1153, 1161
27 (9th Cir. 2012); Tackett, 180 F.3d at 1100.
28 / / /

**III.**

**DISCUSSION**

The parties present one disputed issue: whether the ALJ's RFC determination is the product of legal error where the ALJ failed to properly evaluate the opinions of treating physician, Phillip Kay, M.D.[5] and psychiatric consultative examiner, Jeriel Lorca, M.D. Jt. Stip. at 14.

**A.    Applicable Law**

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

In evaluating physicians' opinions,[6] the case law and regulations under which this case must proceed distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. See Farlow v. Kijakazi, 53 F.4th 485, 488 (9th Cir. 2022); see also

---

[5] Plaintiff contends that the ALJ incorrectly referred to this physician as Dr. Kay, rather than Dr. Hay (Jt. Stip. at 17 n.3), but per the medical records, the name of this physician appears to be Phillip Kwang Pyo Kay. See, e.g., AR 280, 678-79; see also AR 3535.

[6] The Court notes that although new regulations have been adopted that change the framework for how an ALJ must evaluate medical opinion evidence, these new regulations only apply to claims filed on or after March 27, 2017. Revisions to Rules Regarding Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide the ALJ will no longer "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5867-68; see also 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c(b).

20 C.F.R. § 404.1527. As a general rule, a treating physician's opinion should carry more weight than an examining physician's opinion, and an examining physician's opinion should be given more weight than that of a non-examining physician. Farlow, 53 F.4th at 488. "[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons'" supported by substantial evidence in the record. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted); see also Farlow, 53 F.4d at 488. "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" Carmickle, 533 F.3d at 1164 (citation omitted).

**B.    Analysis**

    1.    Dr. Kay

On January 6, 2016, Dr. Kay completed a three-page physical residual functional capacity questionnaire. AR 931-34. Dr. Kay diagnosed Plaintiff with lumbar disc protrusion, LSS (lumbar spinal stenosis), and coccydynia, and indicated Plaintiff experienced low back pain radiating down left leg and tailbone pain. AR 931. As to clinical findings and objective signs, Dr. Kay wrote "tender left lower lumbar [and] coccyx" and otherwise indicated Plaintiff exhibited normal motor strength, normal sensory, negative straight leg raise, and symmetric reflexes. Id. Dr. Kay opined that Plaintiff could stand and/or walk less than two hours in an eight-hour workday; sit less than six hours in an eight-hour workday; occasionally lift and/or carry 20 pounds; occasionally bend, crouch, and balance, but never climb, kneel, or crawl; occasionally reach, handle, and finger; limited in pushing and/or pulling in both the upper and lower extremities; would need to take unscheduled breaks during an eight-hour workday; and would be absent from work more than three times a month. AR 932-33.

The ALJ accorded "little weight" to Dr. Kay's assessment because: (1) it was based on evidence predating the amended alleged onset date; (2) it was brief and conclusory in form, "with little in the way of clinical findings to support its conclusion"; and (3) the severity of the assessment was not supported by Dr. Kay's treating records, which showed intermittent and conservative care. AR 3492. Instead, the ALJ afforded great weight to the less restrictive opinion of the consultative internist. AR 3491.

First, contrary to Plaintiff's assertion, the ALJ did not discredit the opinion of Dr. Kay "based on its mere formatting." Jt. Stip. at 18. The ALJ found that Dr. Kay's January 2016 assessment was not probative as it was based on evidence significantly predating the amended alleged onset date of July 24, 2018. AR 3492. Plaintiff does not address this finding in the Joint Stipulation or set forth any basis on which to conclude the finding is improper. An ALJ may properly note that medical opinions predating the relevant period are of limited relevance. Ahearn v. Saul, 988 F.3d 1111, 1118 (9th Cir. 2021) ("Medical opinions that predate the alleged onset of disability are of limited relevance." (quoting Carmickle, 533 F.3d at 1165)); Gunderson v. Astrue, 371 F. App'x 807, 809 (9th Cir. 2010). Here, Dr. Kay's January 2016 opinion was rendered more than two years prior to the amended alleged onset date. The ALJ properly discounted Dr. Kay's opinion on that basis.

Second, the ALJ appropriately concluded that Dr. Kay's assessment was brief and conclusory, "with little in the way of clinical findings to support its conclusion." AR 3492. The extreme restrictions assessment by Dr. Kay was not supported by objective clinical findings. The only "clinical findings and objective signs" Dr. Kay identified to support his assessment was tenderness in the left lower lumbar and coccyx. The other clinical findings cited were all normal. AR 931. Although Plaintiff refers to several medical records that she believes support Dr. Kay's findings (Jt. Stip. at 19), none of these records were

1   referenced by Dr. Kay in support of his conclusions or attached, even though

2   such records were available. The ALJ properly relied on this deficiency in

3   assessing the opinion. 20 C.F.R. § 404.1527(c)(3); Thomas v. Barnhart, 278

4   F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any

5   physician, including a treating physician, if that opinion is brief, conclusory,

6   and inadequately supported by clinical findings.").

7          Finally, the ALJ found the severity of Dr. Kay's assessment was not

8   supported by his treating records, which showed intermittent and conservative

9   care. AR 3492. Plaintiff also does not discuss this finding in the Joint

10  Stipulation. "A conflict between treatment notes and a treating provider's

11  opinions may constitute an adequate reason to discredit the opinions of a

12  treating physician or another treating provider." Ghanim v. Colvin, 763 F.3d

13  1154, 1161 (9th Cir. 2014). Here, although the ALJ did not cite any specific

14  medical records in support of this finding, she did explain the basis for her

15  conclusion that Dr. Kay's opinion was inconsistent with his treating records.

16  Elsewhere in her opinion, the ALJ found that medical records showed large,

17  unexplained gaps in treatment, noting that there were very few treatment

18  records from July 2017 until May 2018. AR 3490. However, it does not appear

19  that Dr. Kay was treating Plaintiff at that time; rather, it appears Plaintiff was

20  being treated by Dr. Shaaron E. Zaghi. See, e.g., AR 4960, 4968-69; see also

21  AR 3535. The ALJ also noted that Plaintiff received multiple lumbar epidural

22  steroid injections, which provided relief, and continued with "conservative

23  measures to relieve pain." AR 3490. Aspects of Plaintiff's treatment were

24  certainly conservative, such as physical therapy (see, e.g., AR 599, 611, 623,

25  1197) and recommendation for weight management (AR 1308), but it is

26  unclear whether other aspects of Plaintiff's treatment, namely, the epidural and

27  sacrococcygeal injections (see, e.g., AR 283, 678, 1135), were conservative. It

28  is doubtful that epidural steroid injections qualify as conservative medical

1    treatment in this context. See Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir.

2    2017) (noting it had previously "doubt[ed] that epidural steroid shots to the

3    neck and lower back qualify as 'conservative' medical treatment" (alteration in

4    original) (quoting Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir.

5    2014))); Michael W. v. Kijakazi, 2023 WL 2761120, at *7 (C.D. Cal. Apr. 3,

6    2023) (finding epidural steroid injections are not conservative treatment). The

7    Court need not determine whether this last reason for discounting Dr. Kay's

8    opinion was valid as other legally sufficient reasons supported by substantial

9    evidence were provided for discounting his opinion. See Schalk v. Berryhill,

10   734 F. App'x 475, 479 (9th Cir. 2018) (it was harmless error to discount

11   opinion on erroneous basis where two other proper reasons were given (citing

12   Molina, 674 F.3d at 1122)); Donathan v. Astrue, 264 F. App'x 556, 559 (9th

13   Cir. 2008) (ALJ's erroneous characterization of treating physicians' opinions

14   was harmless "because the ALJ provided proper, independent reasons for

15   rejecting these opinions"); Riad v. Colvin, 2014 WL 2938512, at *3 (C.D. Cal.

16   June 30, 2014) ("although the ALJ proffered one legally insufficient reason for

17   according less weight to [treating physician's] opinion, the error was harmless

18   because the ALJ also proffered two independent, legally sufficient reasons

19   supported by substantial evidence").

20          Accordingly, Plaintiff has not shown that the ALJ erred in assessing the

21   persuasiveness of Dr. Kay's opinion.

22          2.     Dr. Lorca

23          On June 22, 2018,[7] Dr. Lorca performed a psychiatric consultative

24   examination. AR 4945-50. Dr. Lorca diagnosed Plaintiff with bipolar disorder

25   most recent episode depressed, and noted that on mental status exam, Plaintiff

26   _____

27          [7] The ALJ mistakenly refers to this consultative examination as taking place in
     May 2018. AR 3486.

28

11

1  was "somewhat related," but her affect was dysthymic, tearful, and anxious.

2  AR 4950. He also noted that she made various errors on the tasks of memory,

3  attention, and concentration. For instance, Plaintiff's forward memory recall

4  was accurate, but backward recall was not. AR 4949. She could recall three out

5  of three items immediately, but only two out of three items after five minutes

6  AR 4949. Dr. Lorca found that Plaintiff was mildly limited in her ability to:

7  perform simple and repetitive tasks; maintain regular attendance; perform

8  work activities without additional or special supervision; and accept

9  instructions from supervisors. Dr. Lorca further found that she was moderately

10 limited in her ability to perform detailed and complex tasks, perform work

11 activities on a consistent basis, and to interact with coworkers and the public;

12 and she was markedly limited in her ability to complete a normal workday or

13 work week without interruptions resulting from any psychiatric conditions and

14 to deal with the usual stresses encountered in competitive work. AR 4950. Dr.

15 Lorca opined that Plaintiff's condition was expected to improve in the next 12

16 months with active treatment and she was capable of handling funds. Id.

17      The ALJ gave partial weight to Dr. Lorca's opinion that Plaintiff was

18 moderately limited in her ability to perform detailed and complex tasks,

19 perform work activities on a consistent basis, and interact with coworkers and

20 the public, noting that Dr. Lorca examined Plaintiff personally during the

21 same year as the period under consideration and his assessment was largely

22 supported by his findings on examination. AR 3486. However, the ALJ gave

23 less weight to Dr. Lorca's assessment that Plaintiff was markedly limited in her

24 ability to complete a normal workday or work week without interruptions

25 resulting from any psychiatric conditions, and deal with the usual stresses

26 encountered in competitive work for three reasons. First, the ALJ found the

27 extent of these limitations was not substantiated by Dr. Lorca's findings on

28 examination, which were "largely unremarkable except for some errors on the

1 tasks of memory, attention[,] and concentration." Id. The ALJ also noted that

2 Plaintiff told Dr. Lorca and acknowledged at the administrative hearing that

3 she was more depressed at the time of the examination due to a recent finding

4 of a tumor, which was later determined to be a benign perianal abscess.

5 Finally, the ALJ found that subsequent mental status examinations were

6 within normal limits. Id.

7         The ALJ conducted a proper assessment of Dr. Lorca's opinion.

8 Preliminarily, the Court notes that the ALJ did not reject the opinion in its

9 entirety. By assigning it "partial" weight, the ALJ necessarily gave

10 consideration and credited aspects of the opinion. AR 3486. Indeed, the ALJ's

11 RFC assessment limited Plaintiff "to simple, routine tasks with no more than

12 occasional interaction with supervisors and incidental contact with coworkers

13 and the public," (AR 3487), restrictions reflected in Dr. Lorca's opinion.

14         To the extent the ALJ did not accept the more-restrictive mental

15 limitations in the opinion, she gave proper reasons for doing so. First, the ALJ

16 noted that Dr. Lorca's findings were largely unremarkable except for some

17 errors on the tasks of memory, attention, and concentration. AR 3486. Plaintiff

18 contends that the ALJ cherry-picked largely normal examination findings, but

19 failed to properly consider the "numerous" abnormal findings. Jt. Stip. at 20.

20         Despite Plaintiff's depressed mood and dysthymic, tearful, and anxious

21 affect, her thought processes were coherent and organized; her thought content

22 was relevant and non-delusional; her speech was normal and clearly

23 articulated without stammering, dysarthria, or neologisms; she correctly

24 answered simple math questions; and she was alert and oriented to time, place,

25 person, and purpose. AR 4948. Only her insight and judgment "appear[ed] to

26 be impaired regarding her current situation," and she responded appropriately

27 to Dr. Lorca's question, "What would you do if you were in a big store like

28 Wal-Mart and a little child came up to you crying and said he/she was lost?"

1  Plaintiff responded that she would "take her to the front and try and find her
2  mom." AR 4949. Otherwise, as the ALJ reasonably found, the examination
3  was largely unremarkable, except for a few errors on the tasks of memory,
4  attention, and concentration. AR 3486, 4948-49. Plaintiff knew the current
5  president, but when asked for the capital of the United States, she said,
6  "Sacramento." After she was told that was the capital of California, she then
7  realized that the capital of the United States was Washington, DC. AR 4948.
8  After noting that Plaintiff incorrectly stated that 85 cents would be received
9  from a dollar if two bananas were bought at 15 cents each, but answered
10 correctly when she was reminded there were two bananas, Dr. Lorca observed
11 that Plaintiff had "some difficulty" following the conversation well. AR 4949.
12 Plaintiff spelled "world" forwards correctly, but not backwards, and had
13 difficulty with the serial sevens. Plaintiff's forward memory recall was
14 accurate, but backward recall was not. Id. She could recall three out of three
15 items immediately, but only two out of three items after five minutes. Id.

16      Plaintiff argues these errors supported the marked limitations assessed by
17 Dr. Lorca. Jt. Stip. at 21. But, where, as here, the evidence is "susceptible to
18 more than one rational interpretation," the Court may not substitute its
19 judgment for that of the ALJ. See Burch v. Barnhart, 400 F.3d 676, 679 (9th
20 Cir. 2005) ("Where evidence is susceptible to more than one rational
21 interpretation, it is the ALJ's conclusion that must be upheld"); McGee v.
22 Kijakazi, 2021 WL 5860899, at *1 (9th Cir. Dec. 10, 2021). The ALJ
23 reasonably found that Dr. Lorca's more-restrictive limitations were
24 inconsistent and not supported by his findings on examination.

25      Second, the ALJ discounted Dr. Lorca's more-restrictive mental
26 limitations based on the situational nature of Plaintiff's depression. The ALJ
27 noted that Plaintiff relayed to Dr. Lorca, and acknowledged at the hearing,
28 that she was more depressed at the time of the examination due to a recent

finding of a tumor, which was later determined to be a benign perianal abscess. AR 3486. Among other things, Plaintiff reported to Dr. Lorca that she usually has depression, which "has been worse since a tumor was found[.]" She also indicated she had a panic attack a couple weeks before the examination "for the first time in 6 months." AR 4945; see also AR 3528-29. From a psychiatric standpoint, Dr. Lorca found that Plaintiff's condition was expected to improve in the next 12 months with active treatment. AR 4950. The ALJ reasonably discounted Dr. Lorca's opinion based on the situational nature of Plaintiff's depression. See Lareina N. v. Comm'r of Soc. Sec., 2019 WL 2616620, at *2 (W.D. Wash. June 26, 2019) (ALJ reasonably discounted opinion of examining physician because it was based in part on plaintiff's complaints of physical problems found to be not severe and situational stressors deemed to be transient).

The ALJ's conclusion is reinforced by Plaintiff's subsequent mental status examinations, which as the ALJ found, were within normal limits. AR 3486 (citing AR 4207). Plaintiff contends the ALJ "ignored numerous abnormal subsequent mental status examinations[.]" Jt. Stip. at 22. While Plaintiff cites three medical records reflecting that she continued to suffer mental health issues after Dr. Lorca's examination, as the Commissioner notes, she does not cite a single abnormal mental status examination. Rather, as the ALJ reasonably found, Plaintiff's subsequent mental status examinations were within normal limits. See AR 4074, 4207, 4335. Indeed, in February 2019, Plaintiff requested and was provided a note stating she was able to go back to work without restrictions. AR 4313, 4315. The ALJ properly relied on the inconsistency between Dr. Lorca's opinion and the subsequent mental status examinations.

The Court finds the ALJ did not error in her assessment of Dr. Lorca's opinion. Reversal is not warranted.

1

**IV.**

2

**ORDER**

3       IT THEREFORE IS ORDERED that Judgment be entered affirming

4   the decision of the Commissioner and dismissing this action with prejudice.

5

6   DATED: April 28, 2023

7                                                _____

8                                                JOHN D. EARLY
                                                 United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16